**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| BRANDON MILL MANAGER, LLC et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 20-cv-1279 (APM) |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION**

## I.      INTRODUCTION

This action concerns the Federal Deposit Insurance Corporation's ("FDIC") refusal to consent to refinancing a construction loan.  The loan was made to Brandon Mill, LLC, which used the proceeds to convert a historic textile mill located in Greenville, South Carolina, into loft apartments while retaining the mill's historic character.  Plaintiffs Brandon Mill Manager, LLC and Brandon Mill Tenant, LLC are entities formed to develop and manage the historic renovation. They complain that the FDIC's refusal to agree to an initial refinancing offer caused them economic injury after the construction loan was ultimately refinanced on less favorable terms. Plaintiffs bring this action under the Federal Tort Claims Act ("FTCA"), asserting claims of common law and statutory breach of fiduciary duties, breach of contract, negligence, and intentional interference with prospective contractual relations.  Defendant United States moves to dismiss for lack of subject matter jurisdiction and for failure to state a claim.

For the reasons that follow, Defendant's motion is granted.  Although the court rejects Defendant's contention that Plaintiffs' tort claims are barred because they were inadequately

presented to the agency, the court nevertheless agrees that it lacks subject matter jurisdiction. The FTCA does not waive sovereign immunity for tort claims that "arise out of" acts comprising interference with contractual rights, and all of Plaintiff's tort claims fall within that exemption. Furthermore, the court lacks subject matter jurisdiction over Plaintiffs' breach of contract claim. Because the court dismisses the case for lack of jurisdiction, it does not reach Defendant's arguments that Plaintiffs have failed to state a claim.

## II.   BACKGROUND

### A.   Factual Background

In 2015, real estate developer H. Pace Burt, Jr. embarked on a project to convert Brandon Mill—"a designated historic textile mill in Greenville, South Carolina"—into loft apartments while preserving its historic value ("the Project"). Compl., ECF No. 1 [hereinafter Compl.], ¶¶ 7, 22. Efforts to renovate and preserve "historically significant properties" can earn significant tax credits that are valuable to investors. *Id.* ¶ 8. Burt formed multiple limited-liability companies to own, operate, and generate such tax credits for the Project. *Id.* ¶ 9. Understanding the relationship between these entities is critical.

Brandon Mill, LLC ("Mill Owner") owns the property underlying the project. Mill Owner had two members, Plaintiff Brandon Mill Tenant, LLC ("Mill Tenant") and Brandon Mill Investor, LLC ("Mill Investor"). *See* Pls.' Resp. & Opp'n to Def.'s Mot. to Dismiss, ECF No. 13, Pls.' Mem. of P. & A. in Supp. of Pls.' Resp. & Opp'n to Def.'s Mot. to Dismiss, ECF No. 13-1 [hereinafter Pls.' Opp'n.], at 3. Mill Tenant, in turn, at first consisted of two members: Plaintiff Brandon Mill Manager, LLC ("Mill Manager") and First NBC Historic Tax Partners, LLC ("Tax Partners"), a wholly owned subsidiary of First NBC Bank. Compl. ¶ 27. Mill Manager was formed to "represent[] the interests of multiple investor members" and was responsible for executing the

2

Project's business plan. *Id*. ¶ 12. In 2017, Louisiana regulators closed First NBC Bank, resulting in the FDIC becoming the receiver for the bank and the successor to the rights and obligations of First NBC Bank, including those of Tax Partners. *Id.* ¶¶ 33–34.

Two agreements are relevant for purposes of this litigation: the Operating Agreement and the Master Lease. Their provisions concerning the refinancing of debt are central to the case. Under the terms of the Operating Agreement, Mill Manager is responsible for "the day-to-day operations of Mill Tenant." *Id.* ¶ 30. But the Operating Agreement provides that Mill Manager can cause Mill Tenant to incur debt only with the consent of Tax Partners. *Id.*; Def.'s Mot. to Dismiss, ECF No. 11 [hereinafter Def.'s Mot.], Ex. 2, ECF No. 11-4 [hereinafter Operating Agreement], § 2.4(A)(iii). Such consent cannot be "unreasonably withheld." *See* Operating Agreement § 2.4(A)(iii) (requiring "Consent of the Investor Member"); *id.* § 1 ("Consent of the Investor Member") (defining "Consent of the Investor Member"). The second agreement, the Master Lease, is a separate agreement between Mill Owner and Mill Tenant. *See* Def.'s Mot., Ex. 3, ECF No. 11-5 [hereinafter Master Lease]. Under it, Mill Owner could refinance the Project's construction loan only with the approval of Tax Partners. *See id.* § 20.5. Tax Partners could grant or withhold consent to refinance the construction loan "in [its] sole and absolute discretion." *Id.*

In or around 2015, Branch Bank and Trust Company ("BB&T") extended a construction loan of $18 million to Mill Owner to fund the Project. Compl. ¶ 16.[1] Once the property was rehabilitated and achieved a certain occupancy threshold, it became eligible for permanent

---

[1] The Complaint alleges that "Brandon Mill borrowed $18 million from BB&T." Compl. ¶ 16. The court reads Plaintiffs' reference to "Brandon Mill" in this paragraph to mean Brandon Mill, LLC or Mill Owner. That Mill Owner was the debtor on the BB&T is made clear in other Complaint allegations. *See id.* ¶¶ 81, 89 (alleging that the FDIC breached duties of care and loyalty by threatening to interfere and actually interfering "with the refinancing of Brandon Mill, LLC"); *id.* ¶ 95 (alleging the "FDIC intentionally interfered with Plaintiffs' ability to refinance the Brandon Mill, LLC construction loan").

refinancing. *Id.* ¶ 17.   In the spring of 2017, Mill Manager received term sheets "from Arbor Commercial Funding . . . reflecting the terms on which Arbor would provide Mill Manager with permanent financing to refinance the BB&T Construction Loan." *Id.* ¶ 38.  "The Arbor term sheets were very favorable for the LLCs . . . ." *Id.* ¶ 39.   By that point, the FDIC had taken over as successor to Tax Partners, and so in "the summer of 2017, the LLCs, through Mr. Burt, made repeated requests that the FDIC, in its capacity as Receiver for First NBC Bank, give Tax Partners' consent to proceed with refinancing the BB&T Construction Loan on the terms set forth in the Arbor term sheet." *Id.* ¶ 40.  Although the FDIC acknowledged receiving the requests for consent and understood their urgency, it never affirmatively responded, leading the refinancing opportunity with Arbor to slip away. *Id.* ¶¶ 41, 46.

Meanwhile, in its capacity as receiver, the FDIC was attempting to liquidate the assets of First NBC Bank, and it proposed that Mill Manager "make an offer to purchase Tax Partners' membership in Mill Tenant." *Id.* ¶ 35.  Mill Manager made an offer to the FDIC, to which the FDIC did not respond. *Id.* ¶¶ 35–36.  By September 2017, Burt became suspicious that the FDIC had withheld its consent to Arbor's refinancing proposal to extract a higher price for the buyout of Tax Partners' membership in Mill Tenant. *Id.* ¶ 47.  In other words, Burt believed that the FDIC would consent to refinancing only if Mill Manager increased its offer to buy out Tax Partners' interest in Mill Tenant. *Id.*

In October 2017, Burt secured an alternative commitment to refinance from another lender, but on less favorable terms than what Arbor had offered. *Id.* ¶ 49.  Burt then requested the FDIC's consent to the new refinancing, and the FDIC responded by promising to consider the offer but "tied" its consent to a buyout of Tax Partners' interest in Mill Tenant. *Id.* ¶ 51.  Only after Burt threatened legal action did the FDIC consent to the refinancing. *Id.* ¶¶ 52–53.

4

B.      **Exhaustion of Remedies**

Notwithstanding the FDIC's eventual consent, Plaintiffs pursued legal action against the FDIC, starting with exhausting their administrative remedies.  On May 13, 2019, Plaintiffs Mill Manager and Mill Tenant filed identical claim forms, known as Standard Form 95s ("SF 95s"), with the FDIC.  *See* Def.'s Mot., Ex. 4, ECF No. 11-6; Def.'s Mot., Ex. 5, ECF No. 11-7 [hereinafter, collectively, SF 95s].  The FDIC treated the SF 95s as asserting claims under the FTCA and the Financial Institutions Reform, Recovery and Enforcement Act of 1989 ("FIRREA").  *See* Reply in Support of Def.'s Mot. to Dismiss, ECF No. 16 [hereinafter Def.'s Reply], Ex. 8, ECF No. 16-1 [hereinafter Grieser Decl.], ¶ 3.  According to narratives accompanying the SF 95s, Mill Owner and Burt had suffered economic damages in the amounts of $320,629.77 and $1,250,701.31, respectively, due to the FDIC's refusal to approve the Arbor refinancing.  *See* SF 95s ¶¶ 50–51.  Neither the SF 95s nor the accompanying narratives identified a damages amount for either Plaintiff.

On October 10, 2019, a claims agent for the FDIC, Donald Grieser, mailed to each Plaintiff an identical pair of letters, both of which referenced only Plaintiffs' claim under FIRREA. *See* Grieser Decl., Exs. C–F (each letter citing FIRREA provisions under 12 U.S.C. § 1821(d)(5)). The first letter requested that Plaintiffs submit "additional information regarding [their] Proof of Claims" by October 24, 2019, and the second letter sought a 30-day extension of the 180-day statutory deadline to respond to a FIRREA claim.  *See id.*  On October 10, 2019, Grieser also sent via email to Plaintiffs' counsel the letters he had sent by regular mail.  Grieser Decl. ¶¶ 6–7; Grieser Decl., Ex. G.

Plaintiffs never received the mailed letters.  The U.S. Postal Service returned them marked "Return to Sender Not Deliverable as Addressed Unable to Forward."  Grieser Decl. ¶ 8 (internal

quotation marks omitted).  It is unclear when precisely Plaintiffs' counsel received the letters via email.  Not until a month later, on November 10, 2019, did counsel responded to Grieser's email, stating that his law firm had been experiencing "debilitating" technical issues "for many weeks." Grieser Decl., Ex. J.  Still, counsel returned executed forms consenting to the extension request. *See id.*

In the interim, however, FDIC had decided to deny Plaintiffs' claims, at least under FIRREA, without receiving additional information from Plaintiffs.  On November 6, 2019, Grieser sent by certified mail a "Notice of Disallowance of Claim" that stated, "This claim has not been proven to the satisfaction of the Receiver."   Grieser Decl., Exs. H–I (citing 12 U.S.C. § 1821(d)(5)(D)(i)).  It is uncertain whether by November 10, 2019, Plaintiffs' counsel had received these denials when he forwarded by email consents to the extension requests.  Grieser eventually responded to counsel's November 10th email eight days later, attached the Notices of Disallowance, and stated that they were "FINAL."  Grieser Decl., Ex. K.

As for the FTCA claims, the FDIC separately denied those on November 15, 2019.  Colleen Boles, Assistant General Counsel of the FDIC, sent letters to Plaintiffs stating that the FDIC had considered Plaintiffs' claims under the FTCA "for $0 in damages related to the Brandon Mill Project" and that the agency was denying those claims.  Def.'s Mot., Ex. 6, ECF No. 11-8; Def.'s Mot., Ex. 7, ECF No. 11-9 [hereinafter, collectively, FTCA Disallowance].

### C.    Parallel Litigation Brought by Mill Owner and Burt

This is not the first action arising from the FDIC's refusal to consent to the Arbor refinancing terms.  In 2018, Mill Owner and Burt sued the FDIC, asserting tort, contract, and state law statutory claims arising under South Carolina law, similar to those advanced here. *See Brandon Mill, LLC v. FDIC*, 831 F. App'x 526 (D.C. Cir. 2020).  The trial court dismissed the

6

action on July 31, 2019, and the D.C. Circuit affirmed on December 18, 2020.  *See Brandon Mill LLC v. FDIC (Brandon Mill I)*, Civ. A. No. 18-2308 (RMC), 2019 WL 3458688 (D.D.C. July 31, 2019), *aff'd*, 831 F. App'x 526.  The D.C. Circuit held that Mill Owner and Burt's "various claims fail, at bottom, because [Mill Owner and Burt] have no direct relationship with Tax Partners and therefore lack the requisite legal relationship to plead their claims." *Brandon Mill, LLC*, 831 F. App'x at 527.

### D.     Procedural History

On May 14, 20201, while Mill Owner and Burt's dismissed action was pending on appeal, Mill Manager and Mill Tenant filed this case against the United States under the FTCA. *See* Compl.  Plaintiffs assert various theories that purportedly give rise to liability under the FTCA: (1) breach of fiduciary duty (Count I), (2) breach of contract (Count II), (3) negligence (Count III), (4) breach of duty of loyalty under the South Carolina Limited Liability Company Act ("South Carolina LLC Act") (Count IV), (5) breach of duty of care under the South Carolina LLC Act (Count V), and (6) intentional interference with prospective contractual relations (Count VI).  *Id.* The United States now moves to dismiss the action in its entirety for lack of subject matter jurisdiction and for failure to state a claim.  *See* Def.'s Mot.

As noted, because the court dismisses the action for lack of jurisdiction, it does not reach Defendants' arguments for failure to state a claim.  *See Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) ("[T]he rule is strict that once a court determines that it lacks subject matter jurisdiction, it can proceed no further.").

III.    **DISCUSSION**

A.    **Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint for lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing that such jurisdiction exists. *See Khadr v. United States*, 529 F.3d 1112, 1115 (D.C. Cir. 2008). A court must accept all well-pleaded factual allegations in the complaint as true. *See Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). A court is not limited to the allegations made in the complaint, however, and may consider such materials outside the pleadings as it deems appropriate. *See id.*

B.    **Jurisdictional Challenges**

Defendant challenges the court's subject matter jurisdiction on three grounds. First, it asserts that Plaintiffs failed to satisfy the jurisdictional presentment requirement because they failed to make a sum-certain administrative claim for damages. *See* Def.'s Mot., Mem. of P. & A. in Supp. of Def.'s Mot. to Dismiss, ECF No.11-2 [hereinafter Def.'s Br.], at 11–12. Second, Defendant contends that all of Plaintiffs' claims (except their contract claim) are barred under section 2680(h) of the FTCA as claims arising out of "interference with contract rights," 28 U.S.C. § 2680(h). Def.'s Br. at 12–13. And third, Defendant maintains that Plaintiffs' breach of contract claim must be dismissed as the FTCA does not waive sovereign immunity for contract claims. *Id.* at 13. The court disagrees with the first of these jurisdictional contentions but agrees with the second and third.

1.    *Failure to Present*

The FTCA contains "an administrative-filing requirement, satisfaction of which is a jurisdictional prerequisite to the maintenance of a tort suit against the United States." *GAF Corp.*

*v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).  An FTCA claim is deemed presented "when a Federal agency receives from a claimant . . . an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death."  28 C.F.R. § 14.2(a); *see also* 28 U.S.C. § 2675(a). Thus, a "jurisdictionally adequate presentment is one which provides to the appropriate agency (1) a written statement sufficiently describing the injury to enable the agency to begin its own investigation, and (2) a sum-certain damages claim."  *GAF Corp.*, 818 F.2d at 905.  A claimant is "entitled to file suit at the point at which the claim presented is finally denied, or six months after it is presented if the agency fails to make final disposition of the claim within that period."  *Id.*; *see also* 28 U.S.C. § 2675(a) ("The failure of an agency to make final disposition of a claim within six months after it is filed shall, at the option of the claimant any time thereafter, be deemed a final denial of the claim for purposes of this section.").

Defendant contends that Plaintiffs failed to satisfy the presentment requirement, rendering their claims jurisdictionally barred, because their "administrative claims provided no sum-certain amount for damages, as required by Section 2675(a)."  Def.'s Br. at 11.  Defendant points out that Plaintiffs' SF 95s, on their face, specify no dollar amount in damages.  Instead, the forms state that the "claim asserted herein does not involve damage to personal property or real estate," but instead "involves economic damages," and supply an address where claimants' books and records can be inspected.  SF 95s at 2.  In addition, the identical narratives accompanying the SF 95s only identify sum-certain damages amounts for Mill Owner and Burt, neither of whom are plaintiffs in this action.  *See id.*

The court agrees that Plaintiffs failed to administratively present sum-certain damages claims, but that deficiency does not defeat jurisdiction in this case.  In *GAF Corp.*, the D.C. Circuit observed that

> [w]here a claimant makes a reasonable effort to notify federal agencies of a claim in accordance with the administrative filing procedures of Section 2675(a), and the Government takes no action to apprise the claimant of objections to the presentment within the six-month time period it has to make final disposition of the claim, it seems . . . that such delay qualifies the force of the Government's objections when it subsequently moves for dismissal on the ground that the presentment was inadequate for its investigative purposes.

*GAF Corp.*, 818 F.2d at 915–16.   The court elaborated in a footnote that the government's failure to raise an objection within the six-month statutory period was a question not of waiver but of jurisdiction "as a matter of statutory entitlement."   *Id.* at 916 n.86.   Based on the FTCA's "commitment" to preserving "the claimant's right to sue under the Act" even as it simultaneously encourages settlement, the court found that "there appear to be strong grounds for treating an agency's failure to make timely objection to the adequacy of a presentment as a a instance of agency inaction, giving rise to jurisdiction within the meaning of § 2675(a)."   *Id.*

The circumstance discussed in *GAF Corp.* is precisely what occurred here, and so its reasoning squarely applies.  Plaintiffs filed their administrative FTCA claims on May 13, 2019, but the FDIC did not deny those claims until November 15, 2019—186 days later.  *See* FTCA Disallowance.  At no point during the statutory six-month period did the agency "object to the adequacy of [the] presentment," *GAF Corp.*, 818 F.2d at 916 n.86, thereby denying Plaintiffs the opportunity to "cure [their] presentment in an expeditious fashion,"  *id.* at 916.   The agency's failure to act within the statutory six-month period, when combined with its failure to object to the

10

adequacy of notice provided during that time, qualifies as "an instance of agency inaction" sufficient to give rise to jurisdiction under *GAF Corp*.  *See id.* at 916 n.86.

Defendant retorts that the scenario contemplated in *GAF Corp.* is distinct from what occurred here because the FDIC *did* object to the adequacy of Plaintiffs' presentments.  Defendant cites the deficiency notices sent to Plaintiffs' counsel by Claims Agent Grieser on October 10, 2019, for this proposition.  *See* Def.'s Reply at 5 (citing Grieser Decl., Exs. C–D).  But those deficiency notices concerned the agency's objection to the adequacy of Plaintiffs' administrative claims under FIRREA, not the FTCA.  That much is clear from the face of the October 10th notices—which cite only statutory provisions under FIRREA—and from Grieser's sworn declaration, in which he states, "On behalf of the FDIC, I processed these Claims for purposes of FIRREA."  Grieser Decl. ¶ 3.  Defendant has submitted no similar deficiency notice concerning Plaintiffs' administrative FTCA claims.  Nor has it offered an affidavit from Coleen Boles, the FDIC's Assistant General Counsel, who belatedly denied Plaintiffs' FTCA administrative claims.

Accordingly, because the FDIC neither objected to nor acted with respect to Plaintiffs' presentment within the six-month statutory period, Plaintiffs' failure to specify a sum-certain damages claim does not foreclose the court's jurisdiction.

### 2.      The Interference-with-Contracts-Rights Exception

The court now turns to Defendant's argument that all of Plaintiff's tort claims are excluded from the FTCA's immunity waiver under section 2680(h).  "Although Congress has waived the government's immunity with respect to damages or injuries caused by the 'negligent or wrongful act or omission of a government employee acting within the scope of employment,' it has not waived immunity for every type of tort."  *Kugel v. United States*, 947 F.2d 1504, 1506 (D.C. Cir. 1991) (citation omitted) (quoting 28 U.S.C. § 1346(b)).  Among the torts excepted from the

immunity waiver are "claim[s] arising out of . . . interference with contract rights."  28 U.S.C. § 2680(h).

There can be little doubt that at least one of Plaintiffs' claims is foreclosed by the interference-with-contracts-rights exception—Count VI, intentional interference with prospective contractual relations.  *See* Compl. ¶¶ 93–98.  In *Art Metal-U.S.A., Inc. v. United States*, the D.C. Circuit held that the plaintiff's "claims for interference with prospective advantage are barred as claims arising out of interference with contract rights."  753 F.2d 1151, 1155 (D.C. Cir. 1985). The court explained that "[t]he duty that the [government] officials allegedly breached is the duty not to interfere with [the plaintiff's] economic relationship with third parties."  *Id.* at 1154.  "That duty," the court went on to say, "is the same as the duty underlying a claim for interference with contract rights; the claims are distinguished only because the plaintiff's rights or expectancies under the latter are secured by an existing contract."  *Id.* at 1154.  It then concluded:

> To hold that interference with prospective advantage does not arise out of interference with contract rights under section 2680(h) would subject the government to liability if its employees interfered with the plaintiff's mere expectation of entering a contract, but not if they interfered with a contract already in existence.  Such a result would be illogical and contrary to the "words and reason of the exception."

*Id.* at 1155 (citation omitted) (quoting *Kosak v. United States*, 465 U.S. 848, 853 n.9 (1984)).

With *Art Metal* squarely foreclosing Count VI,[2] the question becomes whether Plaintiffs' other claims qualify as "claim[s] arising out of . . . interference with contract rights." 28 U.S.C. § 2680(h).  The Supreme Court has directed that a court's task in "construing the exceptions set forth in section 2680(h) is to identify those circumstances which are within the words and reason of the exception—no less and no more."  *Art Metal*, 753 F.2d at 1154 (cleaned up) (quoting *Kosak*,

---

[2] Plaintiffs offer no argument to the contrary.  *See* Pls.' Opp'n at 15–17.  Indeed, their Opposition does not even cite *Art Metal*.

12

465 U.S. at 853 n.9). "To determine whether a non-enumerated claim 'arises out of' an enumerated claim, the court must examine the actual conduct upon which the claims are based." *Klugel v. Small*, 519 F. Supp. 2d 66, 75 (D.D.C. 2007) (citing *Kugel*, 947 F.2d at 1507 (noting the court must "scrutinize the alleged cause of [plaintiff's] injury")); *Truman v. United States*, 26 F.3d 592, 595 (5th Cir. 1994) ("[T]he focus of th[e] inquiry is on the conduct on which [plaintiff] bases her claim."). Thus, "the label which a plaintiff applies to a pleading does not determine the nature of the cause of action which he states." *Johnson v. United States*, 547 F.2d 688, 691 (D.C. Cir. 1976) (citation omitted).

Having closely scrutinized the Complaint, the court concludes that all of Plaintiffs' remaining tort claims arise out of alleged interference with contract rights. As the court in *Art Metal* observed, the duty underlying the tort of interference with contract is "the duty not to interfere with [the plaintiff's] economic relationship with third parties." 753 F.2d at 1154. Here, all three claims for breach, regardless of their individual labels, are predicated on the same duty not to interfere with Plaintiffs' economic relationship with a third party—the prospective refinancing with Arbor. The Complaint generally alleges that the FDIC "breached its . . . duties . . . to the LLCs by virtue of" (1) "[f]ailing to timely review the Arbor terms sheet"; (2) "[f]ailing to consider and consent to the Arbor terms sheet"; (3) "[a]ttempting to extort an exorbitant price for Tax Partners' interest in [Mill Tenant] by refusing to consent to the Arbor terms sheet"; (4) "[m]aking threats and [the above] actions" in relation to the Arbor refinancing; and (5) "[f]ailing to exercise reasonable care in the oversight and supervision of its employees and contractors." Compl. ¶ 57. The individual breach counts echo this duty to avoid interfering with a prospective business relationship with Arbor. In Count I (breach of fiduciary duty), Plaintiffs allege that "[b]y failing to timely respond to the request to sign off on new financing, FDIC

13

breached its fiduciary duty to [Plaintiffs]." *Id.* ¶ 62. Likewise, in Count IV (breach of duty of loyalty under the South Carolina LLC Act), Plaintiffs maintain that the FDIC "breached [its] duty of loyalty by threatening and actually interfering with the refinancing of [Mill Owner] as described above." *Id.* ¶ 81. And, in Count V (breach of duty of care under the South Carolina LLC Act), Plaintiffs aver that the FDIC "breached [its] duty of care by threatening and actually interfering with the refinancing of [Mill Owner] as described above in a manner that was grossly negligent, reckless, and intentional." *Id.* ¶ 89. Plaintiffs' Opposition confirms that interference with contractual rights lies at the heart of the case: they state that "[t]his lawsuit has been brought because FDIC . . . unreasonably withheld consent [to the Arbor refinancing agreement] for the sole purpose of pressuring Mr. Burt and [Mill Owner] into paying more" to buy out Tax Partners' interest. Pls.' Opp'n at 20–21. Thus, Plaintiffs' breach of duty causes of action seek "to recover for the breach of duties identical to those underlying a barred claim"; the court thus lacks jurisdiction to hear them. *Art Metal*, 753 F.2d at 1154.

For their part, Plaintiffs do not contest this analysis. *See* Pls.' Opp'n at 15–17. They do not, for example, assert that their breach claims involve a duty other than "the duty not to interfere with [the plaintiff's] economic relationship with third parties." *Art Metal*, 753 F.2d at 1154; *cf. Jerome Stevens Pharms.*, 402 F.3d at 1256 (holding that, because the plaintiff's claims for misappropriation of trade secrets and breach of a confidential relationship involved a duty—not to disclose trade secrets and confidential information—different from the duty not to interfere with the economic relationship of a third party, the FTCA did not bar such claims). Rather, they argue that "as long as some aspect of the conduct upon which a plaintiff bases a tort claims does not constitute a tort as listed in § 2680(h), the suit may continue." Pls.' Opp'n at 15. To that end, Plaintiffs argue that "[n]egligence claims are cognizable under the FTCA," and that "Plaintiffs

14

make tort claims stemming out of negligence." *Id.* at 16. Plaintiffs describe the negligent conduct as follows: "FDIC as Receiver . . . ignore[d] and delay[ed] requests to grant consent in an attempt to force [Plaintiffs'] hand at paying a larger sum for Tax Partners' interests in the Project in exchange for the consent needed to refinance the Project's initial construction loan." *Id.* at 17. As is plain from this description, Plaintiffs' negligence theory—that the FDIC improperly withheld consent to the Arbor refinancing for its own benefit, which in turn economically harmed Plaintiffs—is simply a repackaging of their claim for interference with prospective contractual relations. "[A] litigant cannot circumvent the [FTCA] by the simple expedient of drafting in terms of negligence a complaint that in reality is a claim as to which the United States remains immunized." *Johnson*, 547 F.2d at 691–92. But that is precisely what Plaintiffs have attempted to do here. The court therefore lacks subject matter jurisdiction over their negligence claim as well. *See Ecco Plains LLC v. United States*, 728 F.3d 1190, 1195 (10th Cir. 2013) (rejecting jurisdiction over negligence and conversion claims that arose out acts interfering with contractual rights).

### 3. *Breach of Contract Claim*

That then leaves Plaintiffs' breach of contract claim (Count II). That claim, too, fails for lack of subject matter jurisdiction.

The Tucker Act, 28 U.S.C. § 1491(a)(1), gives the U.S. Court of Federal Claims exclusive jurisdiction over suits against the United States for money damages in excess of $10,000. *See Bowen v. Massachusetts*, 487 U.S. 879, 910 n.48 (1988); *Franklin-Mason v. Mabus*, 742 F.3d 1051, 1055 (D.C. Cir. 2014) ("We have construed the Tucker Act . . . to provide for exclusive jurisdiction in the Court of Federal Claims for contract disputes seeking more than $10,000 in damages [unless an independent grant of jurisdiction exists]."). That appears to be the essence of

15

Plaintiffs' contract claim.  Plaintiffs allege that the FDIC, as successor to First NBC Bank, breached "duties and obligations" owed under "the LLC's operating agreement."  Compl. ¶ 67. Plaintiffs' breach of contract claim therefore belongs in the Court of Claims.

If what Plaintiffs seek to do is jurisdictionally tie their breach of contract claim to their tort causes of action, they cannot now do so.  Because the court lacks jurisdiction over the FTCA claims, it lacks jurisdiction over the contract claim, too.  *See Perry Cap. LLC v. Mnuchin*, 864 F.3d 591, 623 (D.C. Cir. 2017) ("If a separate waiver of sovereign immunity and grant of jurisdiction exist, district courts may hear cases over which, under the Tucker Act alone, the Court of Federal Claims would have exclusive jurisdiction.").  None of the cases that Plaintiffs cite, *see* Pls.' Opp'n at 17–18, compel a different result.

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss, ECF No. 11, is granted.  A final, appealable order accompanies this Memorandum Opinion.

Dated:  August 23, 2021

Amit P. Mehta
United States District Court Judge